UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cr-00554-SRC-3 |
| | ) | |
| RAYMUNDO DELEON, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

Raymundo DeLeon seeks a sentence reduction on four grounds.  *See* doc. 1201.   First, DeLeon claims that his plea to 18 U.S.C. § 924(c) was a legal error.   *Id.* at 4–11 (The Court cites to page numbers as assigned by CM/ECF.).   Second, DeLeon argues that a change in the Department of Justice's policy caused a national sentencing disparity.   *Id.* at 12–14.   Third, DeLeon argues that his "harsh" pretrial incarceration through the COVID-19 pandemic warrants a sentencing reduction.   *Id.* at 14–17.   Fourth, DeLeon argues that an amendment to USSG §5H1.1 entitles him to a sentence reduction.   *Id.* at 17–21.   Having reviewed the record, the Court finds that DeLeon fails to establish any extraordinary and compelling reason that warrants a sentence reduction, and that the factors set forth in 18 U.S.C. § 3553(a) weigh against his early release.

## I.    Background

### A.    Offense background

The Guilty-Plea Agreement sets forth the following facts:

Beginning at a time unknown, but at least from September 2019 through the date of the indictment (October 13, 2021), [DeLeon] knowingly joined with others to possess with the intent to distribute and to distribute crystal methamphetamine and fentanyl in the Eastern District of Missouri and elsewhere.   Specifically,

[DeLeon] was part of a large scale [sic] drug trafficking organization ("DTO") that imported crystal methamphetamine and fentanyl into the Eastern District of Missouri from sources of supply located in Arizona and California and then distributed those drugs through its supply chain.

Co-defendant Kenneth Thomas partnered with Mexican connections to supply the DTO led by co-defendant Stephen Griffin, Jr.. [sic] Thomas utilized [DeLeon] and co-defendant Glenn Williams to mail multi-kilogram quantities of crystal methamphetamine, heroin, and fentanyl to residences in St. Louis, Missouri. [DeLeon] also mailed drug parcels to other parts of the United States.  [DeLeon] typically used the same mailing labels bearing the name of a fictitious company, put the drugs inside metal canisters, and tracked the parcels utilizing his U.S. Postal Service (USPS) account and personal IP address.  During the course of the investigation, investigators intercepted a number of parcels mailed by [DeLeon]. Specifically, investigators interdicted parcels containing:  a half kilogram of fentanyl (June 2020); two kilograms of fentanyl and two kilograms of heroin (July 2020); eight kilograms of crystal methamphetamine (September 2020); and 10 kilograms of crystal methamphetamine (December 2020).  On certain occasions, [DeLeon] contacted USPS to inquire as to the whereabouts of the interdicted package.

Investigators also identified multiple parcels mailed to addresses controlled by the DTO that were later found to contain multi-kilogram amounts of crystal methamphetamine and/or fentanyl.  For example, a trash pull and search warrant at a "stash" house located at 7853 Birchmont yielded boxes mailed by [DeLeon], wrappers for three kilograms, five kilograms of crystal methamphetamine, and a kilogram of fentanyl.  During an enforcement operation against Griffin, investigators recovered approximately seven kilograms of crystal methamphetamine that had wrappings bearing [DeLeon's] fingerprints.

In May 2021, investigators executed a search warrant at the residence of [DeLeon] and co-defendant Jessica Alvarez.  Recovered were firearms belonging to [DeLeon], approximately 226 grams of fentanyl, 453 grams of crystal methamphetamine, and small amounts of MDMA and cocaine.  Also found were packaging, mailing supplies, and labels the same as those recovered from interdicted drug packages and a money counter.

Based upon the evidence and the parties' approximation of the controlled substances which are the subject of the conspiracy, the parties agree that the amount of controlled substances involved in the conspiracy attributable to [DeLeon] as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is 90,000 kilograms or more of converted drug weight.

Doc. 518 at § 4.

2

**B.      Procedural background**

In October 2021, a federal grand jury indicted numerous defendants, including the following charges against DeLeon:   (1) conspiracy to distribute and possess with intent to distribute in excess of 50 grams of actual methamphetamine and 500 grams of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846, (2) conspiracy to distribute and possess with intent to distribute in excess of 400 grams of fentanyl in violation of 21 U.S.C. § 846, and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).   Doc. 7 at 1–4, 9.   In December 2022, DeLeon pleaded guilty to lesser-included conspiracy charges and to possession of a firearm in furtherance of a drug trafficking crime.   Doc. 516; doc. 518 at § 2; *see also* doc. 7 at 1–4, 9.   In exchange, the United States agreed to bring no further prosecution in this district concerning DeLeon's distribution of crystal methamphetamine and fentanyl between September 1, 2019, and the date of the indictment (i.e., October 13, 2021) of which the United States was aware of at the time of DeLeon's guilty plea.   Doc. 518 at § 2.   In April 2023, the Court sentenced DeLeon to an aggregate sentence of 200 months' imprisonment and 4 years' supervised release.   Doc. 638 at 2–3.   DeLeon did not appeal his conviction or his sentence, and he is currently serving his sentence at Beaumont Low FCI in Texas with a projected release date of March 4, 2036.   *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 28, 2026).

In May 2025, DeLeon filed a motion for compassionate release, doc. 1201, which the Federal Public Defender declined to supplement, doc. 1227.   The United States filed a response opposing DeLeon's request, doc. 1257, and DeLeon filed a reply, doc. 1299.   DeLeon's motion is now ripe for the Court's consideration.

3

II.     **Standard**

The compassionate-release statute provides:

(c)   MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT.—The court may not modify a term of imprisonment once it has been imposed except that—

> (1)     in any case—
>
> > (A)     the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > > (i)     extraordinary and compelling reasons warrant such a reduction;
> > >
> > > . . . .
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

After sentencing, district courts have very limited authority to modify the sentence. *See* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under certain listed exceptions]."); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. § 3582(b))); Fed. R. Crim. P. 35(a)

4

("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.").

The Court may grant compassionate release if the court finds, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).

## III.   Discussion

### A.   Exhausting administrative remedies

"According to the plain terms of § 3582(c)(1)(A), prisoners can bring compassionate-release motions on their own once they have exhausted their administrative remedies."   *United States v. Houck*, 2 F.4th 1082, 1083 (8th Cir. 2021) (citation omitted).   "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'"   *Id.* at 1083–84 (alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)).   "This requirement is a mandatory claim-processing rule."   *Id.* at 1084 (citations omitted).   But "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'"   *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)).   As such, courts enforce the rule when the opposing party properly raises failure to exhaust as a defense.   *Houck*, 2 F.4th at 1084; *Manrique*, 581 U.S. at 121.   The United States has not raised the issue of failure to exhaust here. Therefore, the Court will proceed to the merits.

### B.      Extraordinary and compelling reasons

### 1.      18 U.S.C. § 924(c)

First, DeLeon argues that his plea to possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) presented a legal error.   Doc. 1201 at 4–11.   This does not constitute an "extraordinary and compelling reason" under the compassionate-release statute, and the Court need not address the merits of this argument.   *See* 18 U.S.C. § 3582(c)(1)(A); U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2025).   DeLeon cannot attack the validity of his conviction under the compassionate-release statute.   *See Fernandez v. United States,* No. 24-556, 2026 WL 1485476, at * 9–10 (U.S. May 28, 2026); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) ("[Defendant] cannot avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead."); *see also United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020).   The proper recourse for challenging a conviction is to pursue a direct appeal or a motion for post-conviction relief under 28 U.S.C. § 2255.   *See Fernandez,* 2026 WL 1485476, at * 9– 10; *Crandall*, 25 F.4th at 586; 28 U.S.C. § 2255.

### 2.      DOJ's change in policy

Second, DeLeon argues that he is entitled to a sentence reduction because he did not receive "the benefit of the DOJ change in policy in 2023," doc. 1201 at 12, and that the DOJ's policy created sentencing disparities, *id.* at 12–14.   This is also not an "extraordinary and compelling reason" that warrants a sentence reduction.   *See* U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2025).   The DOJ's policy is not a change of law; rather, it is non-binding, internal guidance to federal prosecutors.   DeLeon fails to show how any alleged

6

disparity fits the category of "extraordinary or compelling reasons" that warrants relief.   *See*

doc. 1201.   The only policy statement that mentions disparities provides:

> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2025).   DeLeon does not

meet the section 1B1.13(b)(6) criteria.

### 3.      COVID-19

Third, DeLeon claims that "his pre-trial harsher [sic] conditions of confinement during

the COVID-19 pandemic [are] an 'extraordinary and compelling reason' supporting a reduced

federal sentence."   Doc. 1201 at 15.   The policy statement explains that medical circumstances

may warrant a sentence reduction when the defendant suffers from a terminal illness, exhibits a

substantially diminished ability to take care of himself, requires long-term or specialized care he

is not receiving in custody, or is at risk of an ongoing infectious-disease outbreak or public-

health emergency.   *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(1) (U.S. Sent'g Comm'n

2025).   Specifically, the applicable policy statement provides:

> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
>> (1) Medical Circumstances of the Defendant.—
>>
>>> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory).   A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.   Examples include metastatic

solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

*Id.*

Applying the plain meaning of the applicable policy statement, DeLeon fails to set forth an "extraordinary and compelling reason" that warrants a reduction. *See* doc. 1201. The evidence does not reflect that DeLeon is currently experiencing a deteriorating physical or

8

mental condition that would diminish his ability to function in a correctional facility, and his medical conditions, whatever they may be, are not terminal.  *See id.*   Additionally, DeLeon provides no evidence of an ongoing outbreak of infectious disease.  *See id.*

### 4.    USSG §5H1.1

Finally, DeLeon argues that an amendment to section 5H1.1 of the U.S. Sentencing Guidelines entitles him to a sentence reduction.   Doc. 1201 at 17–21.   This argument fails for two reasons.

In 2024, Amendment 829 revised section 5H1.1 to state the following:

Age may be relevant in determining whether a departure is warranted.

Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses.  Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships.  In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood.  Youthful individuals also are more amenable to rehabilitation.

The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age.  Age-appropriate interventions and other protective factors may promote desistance from crime.  Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing.

Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

U.S. Sent'g Guidelines Manual § 5H1.1 (U.S. Sent'g Comm'n 2024).   Amendment 829 did not apply retroactively.   *See* U.S. Sent'g Guidelines Manual § 1B1.10 (U.S. Sent'g Comm'n 2024).

And, in 2025, Amendment 836 removed section 5H1.1 from the United States Sentencing

Guidelines.   *See* U.S. Sent'g Guidelines Manual § 5H1.1 (U.S. Sent'g Comm'n 2025).

Additionally, the applicable policy provides:

> (c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S. Sent'g Guidelines Manual § 1B1.13(c) (U.S. Sent'g Comm'n 2025).   Thus, the

amendments to section 5H1.1 do not constitute an "extraordinary and compelling reason" that

warrants a sentence reduction or release.

For the reasons set forth above, none of DeLeon's grounds—alone or in combination

with each other—constitute an "extraordinary and compelling reason" under the compassionate-

release statute.   *See* 18 U.S.C. § 3582(c)(1)(A); U.S. Sent'g Guidelines Manual § 1B1.13 (U.S.

Sent'g Comm'n 2025).

### C.     Section 3553(a) factors

Even if extraordinary and compelling reasons supported DeLeon's request for a sentence

reduction—which they do not—the Court must "consider[] the factors set forth in

section 3553(a) to the extent that they are applicable."   18 U.S.C. § 3582(c)(1)(A).   Among

others, these factors include "the nature and circumstances of the offense and the history and

characteristics of the defendant," as well as the need for the sentence imposed, *inter alia,* "to

reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense."   18 U.S.C. § 3553(a)(1)–(2).   The Court must also consider "the

need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."   18 U.S.C. § 3553(a)(6).

The Eighth Circuit affords district courts "broad discretion" in weighing the section 3553(a) factors.   *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (citation omitted).   District courts need not "mechanically recite the sentencing factors listed in 18 U.S.C. § 3553(a)."   *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020) (citation omitted). "When considering the § 3553(a) factors, '[a] district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors.'" *United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013) (alteration in original) (quoting *United States v. Perkins*, 526 F.3d 1107, 1110 (8th Cir. 2008)).

After reviewing the section 3553(a) factors, the Court finds that DeLeon has failed to carry his burden for release.   When reviewing the nature and circumstances of the offense and the history and characteristics of DeLeon, the Court finds that these factors weigh heavily against release.

In this case, DeLeon and his co-defendants were involved in a large-scale conspiracy in which they contributed to the distribution of fentanyl and crystal methamphetamine throughout the district.   Doc. 619 at ¶ 79.   In total, investigators seized approximately 39 firearms, 499.2 pounds of methamphetamine, 22 pounds of heroin, 49.1 pounds of fentanyl, four vehicles, ammunition, miscellaneous jewelry, and $406,202 in United States currency during the conspiracy.   *Id.*   DeLeon possessed at least one firearm in furtherance of the drug-trafficking activities.   *Id.*

11

Prior to this case, DeLeon received felony convictions for possession of a controlled substance (four convictions), carrying a loaded firearm in public (one conviction), and possession of a firearm by a convicted felon (one conviction).   *Id*. at ¶¶ 101–06.   DeLeon also received a misdemeanor conviction carrying a loaded firearm in a public place.   *Id*. at ¶ 100.

DeLeon fails to come forward with anything that would change the Court's original analysis at sentencing.   Releasing DeLeon early would neither reflect the seriousness of his offense nor provide just punishment for his offense.   And it would give rise to unwarranted sentence disparities among similarly situated defendants.   For these reasons, the Court finds that the section 3553(a) factors weigh against DeLeon's release.   Having thoroughly considered the record and all relevant matters, the Court finds no basis to reduce DeLeon's sentence.

## IV.     Conclusion

For the reasons set forth above, the Court denies DeLeon's [1201] Motion for Reduction in Sentence.

So ordered this 28th day of May 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE